**FILED**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

~~CIRCUIT~~

JUL 2 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GARY BARNES )
Reg.No. 06015-007 )
F.C.C. Petersburg-Medium )
P.O. Box 90043 )
Petersburg,Virginia 23804, )
        Petitioner )
     )
    vs. )
DISTRICT OF COLUMBIA AGENCIES, )
U.S. PAROLE COMMISSION, )
VANESSA ADAMS, WARDEN et al., )
        Respondents )

Case No ..

CASE NUMBER 1:05CV01456

JUDGE: Royce C. Lamberth

DECK TYPE: Habeas Corpus/2255
                   22

DATE STAMP: 07/█/2005

Petitioner's petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § Section 2241 and the Interstate Corrections Compact Pursuant to D.C. Code §§ 24-1001 and 24-1002.

NOW COMES, Gary Barnes (herein-after "Petitioner), acting Pro SE herein, respectfully moves for this Honorable Court to "Order" the United States Parole Commission (USPC) respondents et al., to grant a new revocation hearing which will meet all petitioner's Federal Constitutional Rights and or immediate release from custody pursuant to 28 U.S.C. § 2241 from the unconstitutionally Order by the Board of Parole of the District of Columbia on August 01, 1996 which ordered petitioner's parole revolked for Criminal and Non-Criminal violations and ordered in custody of respondents.

Petitioner (whom) is a D.C. Code offender further moves pursuant to the Interstate Corrections Compact, D.C. Code § 24-1001 and 24-1002, that this Court deny any motion that the Government may proffer, requesting that this petition be transferred outside of the District of Columbia's jurisdiction.

(1)

## Jurisdiction

Jurisdictional authority is vested pursuant to 28 U.S.C. § 2241 et seq. Ex Parte McCardle, 74 U.S. 506 (1868).

Jurisdictional authority is vested where petitioner recieved an unconstitutional joint revocation hearing with Mr. Charles Singletary. Due to petitioner being a District of Columbia Criminal Code offender being forth this Writ of Habeas Corpus, pursuant to Title 28 U.S.C. § 2241, against the District of Columbia; Edward F. Reilly, Chairman for the U.S. Parole Commission; Odie Washington, Director of the D.C. Department of Correction; VaNessa Adams, Warden at Petersburg, Va. (Medium) and Alberto Gonzalez, Attorney General, for the unlawful action by the District of Columbia Agencies to allow former Board of Parole of the District of Columbia and now respondent to violates petitioner's Federal due process rights under the District of Columbia jurisdiction.

Therefore, petitioner contends that the U.S. Parole Commission and the former District of Columbia Parole Board violated the petitioner's rights under Revitalization Act pursuant to D.C. Codes by not following the guideline rules against D.C. Coded offender's. D.C. Codes § 24-209 and 24-2131 (c).

The petitioner has the right under the 28 U.S.C. § 2241 to bring this claim of constitutional violations in the jurisdiction where he was sentenced, where the Civil Rights violations occured.

[1] Civil Right Key 207 (1) United States Key 50.10 (3) Even
if Interstate Correction Compact did not create agency relat-
ionship between District of Columbia Department of Correction
and Federal Bureau of Prisoners (BOP) D.C. prisoner serving
their sentence in facilities of Bureau of Prison could bring
action against District of Columbia, since Respondents retained
legal custody over prisoners and under terms of compact prisoners
retained any rights they would have if held in District of Col-
umbia Prison.

[2] Under Interstate Correction Compact both the District of Col-
umbia Department of Correction and Federal Bureau of Prison are
agents under Interstate Correction Compact for the purpose of
Civil Action brought by D.C. prisoner's serving their sentences
in facilities operated by (BOP) could bring action against off-
icals for violating their Federal Rights, although (BOP) was not
a party of the compact, it contract explicitly involked the com-
pact.

[3] Parole Key 60:  Parole Consideration hearing are essential
part parole eligibilty.

[4] Parole Key 51:  In most cases U.S. Parole Commission must
apply District of Columbia parole eligibilty/suitability regul-
ation to District of Columbia D.C. Code Sentence.

### Exhaustion of Remedies

Petitioner and others like him under the parole supervision
of District of Columbia Interstate Compact and jurisdiction of

(3)

1  the U.S. Parole Commission, D.C. Coded Offenders do not have the

2  statutory right to appeal parole decision. The exhaustion of ad-

3  ministrative remedies is not explicitly required under [28 U.S.C.

4  § 2241] Hurst vs. Hogan, 435 F. Supp. 125-126 (D.C. 1977) See:

5  Grant vs. Reilly, 224 F. Supp. 2.d 26 (D.C. 2002).

6                    Summary of History Pertaining To
                    U.S. Parole Commission Authority
7                    Over D.C. Code Offenders....

8       The District of Columbia parole statue is found at 24 D.C.

9  Code Section 201 et seq.. That statue set forth basis proced-

10 ures and established the D.C. Board of Parole as the body resp-

11 onsible for parole supervision, parole grants, revocation of D.C.

12 Code offenders. The D.C. Board of Parole in turn promulgated

13 rules and regulations governing parole, which are contained in

14 the D.C. Municipal Regulations (D.C.M.R.) at 28 DCMR Chapter 1

15 and Chapter 2. See: Appendix III.

16      In 1997,however, congress passed the District of Columbia

17 Self Government Improvement Act that legislation abolishes the

18 D.C. Board of Parole on or around August 5,2000, and transferred

19 the function of Parole Supervision and Parole Revocation to the

20 Court Services and Offenders Supervison Agency, and the U.S. Pa-

21 role Commission respectively. See: Appendix II for D.C. Code

22 24-1231. The first stage of transfer occurred in August 1998,

23 where the U.S. Parole Commission acquired the parole grant func-

24 tion-making parole grant decision and reparole decisions. The

25 final stage was August 5,2000, when the Commission then took over

1  the authority to issue warrants for parole violations, conduct

2  revocation hearings and modify conditions of parole for D.C.

3  offenders. The U.S. Parole Commission was promulagated regula-

4  tions to govern D.C. Code offenders parole eligibilty and or

5  suitibility, established under DCMR, codified in 1987. These

6  parole regulations currently published at 28 CFR Part 2, Sub-

7  part C. So therefore, the transfer of power from the D.C.

8  Board of Parole to U.S. Parole Commission, D.C. parole laws re-

9  main should remain binded, although the Revitalization Act gives

10 the U.S. Parole Commission rulemaking power for parole matters,

11 It "mandates" that those powers be exercised with the precept

12 of D.C. parole laws and regulations.

13     <u>Petitioner's Constitution Violation Questions</u>

14 1.  Whether the Respondent's violated the petitioner's due pro-

15 cess of law under his Federal Sixth Amendment Rights to the con

16 frontation clause of heresay statements of government witness

17 without testing truthfulness of written statements at hearing?

18 2.  Whether the D.C. Parole Board and U.S. Parole Commission, Re-

19 spondent's violated petitioner's due process at the revocation

20 hearing by holding a joint hearing with Mr. Singletary hearing?

21 3.  Whether the Respondent's violated his Eighth Amendment Right

22 by holding petitioner in custody without giving him a special/

23 interim hearing which is over 5 yrs. according to D.C. Code 24-

24 131 (c)?

25 4.  Whether Respondent's violated due process of law, by allowing

(5)

1  U.S. District Attorney, Detectives from earlier investigation
2  which resulted in grand jury dismiss the case for lack of evi-
3  dence against the petitioner, but was allowed it to be tools
4  of vindictiveness prosecution for influencing the outcome of re-
5  vocation hearing?

6  5.  Whether or not petitioner recieved effective assistance of
7  counsel at his hearing, for counsel's failure to call witnesses,
8  request a separate revocation hearing, cross examine the third
9  party hearsay statements, subpeona this adversary witness, etc.?

10  6.  Whether the Respondent's violated petitioner's due process for
11  failure to appoint him, his own individual counsel at the revoca-
12  tion hearing?

13                    Venue Appropriate Forum

14      The Virginia Circuit Court has found that, Virginia Correct-
15  ions in an Agent of both, the District of Columbia and the Bureau
16  of Prisons, at for certain purposes.  Moreover, Petitioner have
17  standing because Respondent's have a "continuing responsibility"
18  for certain purposes for inmates they placed in Virginia Correct-
19  ion Facilities.  Also, the Virginia Circuit has rejected the not-
20  ion that causation only lies when a agency is "the direct actor"
21  in the injurious conduct.".

22      As the Court has recently held,Respondent's "Cannot absolve
23  themselves of their duties to District prisoner's simply by con-
24  tracting for the service of the third party".  See: Scott vs. Dis-
25  trict of Columbia, Civ. No. 98-1645, at 10-11 (D. D.C. Nov.22,1999).

                              (6)

1  This is particularly true whereas here, the respondent's have

2  the unconditional contractual right to remove Petitioner from

3  Virginia Custody.  See: BOP Contract §§21.1 D.C. Contract §20.1.

4      It is clear that the contract requires Virginia Correction

5  to follow any order that changes Respondent's obligation to Peti-

6  tioners.  See: <u>Jackson vs. District of Columbia</u>, 89 F. Supp. 2d

7  48-52 D. D.C. 2000).  Also, "It is also a truism that a Petit-

8  ioner choice of forum will rarely be disturbed unless the bal-

9  ance of convienience is strongly in favor of the Respondents.See:

10  <u>Ross vs. Owen</u>, 221 F.2d 94-95 (D.C. Cir. 1955).

11      The compact provides that "the term and provision of this

12  compact shall be part of any control entered into by authority

13  of or pursuant to the compact, and nothing in the contract shall

14  be inconsistant with the compact. See: D.C. Compact Art.III (b)

15  and Va. Compact Art. III (b).  In contrast, the contract, in the

16  primary article concerning procedure for prisoner transfers from

17  on jurisdiction to other States for this reason petitioner is a

18  District of Colimbia prisoner "contracted to the Federal Bureau

19  Prison as such, Petitioner falls under the jurisdictional cust-

20  odianship of the District of Columbia.  See: Interstate Correct-

21  ion Compact, D.C. Code §§24-1001 and 24-1002, which clearly states

22  in pertinent part:  "Inmates confined in a Institutional pursu-

23  ant to the terms of this compact shall at all times be subject

24  to jurisdiction of the sending State and may at any time be re-

25  moved from the receiving State for transfer to a prison of other

(7)

1  institution within the sending State, for transfer to another
2  institution with which the sending States may have a contract
3  or other rights to confine inmates, for release on probation
4  or parole for discharge, or for any other purpose permitted by
5  the laws of the sending States; provided, that the sending State
6  shall continue to obligate to pay as may be required pursuant
7  to the terms of any contract entered into under the term of Art-
8  icle III". Id. at IV (c).  Moreover, the compact states that
9  confinement in Virginia shall not deprive any inmate so confined
10  of [any] legal rights which the inmate so would have had if con-
11  fined in an appropriate institution of Respondent's.  See: D.C.
12  Compact Art. IV (r) and Va. Compact Art. IV(e).  Petitioner fur-
13  ther asserts that because this civil action is againt the Dist-
14  rict of Columbia and its Agents, which entered into by contract;
15  that the District of Columbia, is the proper venue for this case
16  to be heard. <u>Jackson</u> supra.

17    "When-ever the appropriate officals in a State party to this
18  contract pursuant to Art.III to this shall decide that confine-
19  ment in or transfer of an inmate to an institution within the
20  territory of another party State is neccessary or desirable in
21  order to provide adequate quarters and care or an appropriate pro-
22  gram of rehabilitation or treatment, the appropriate officals may
23  direct that the confinement be within an institution within the
24  territory of the other party State, the recieving State to act
25  in that regard solely as agents for the sending States. Id. D.C.

(8)

Compact Art. IV (a) and Va. Compact Art. IV (a).

## CASE SUMMARY

The Petitioner's original instant offense occured November 9,1983 for Armed Kidnapping (D). Armed Robbery (E), Unauthorized Use of Vehicle (G), Dest. of Property over $200.00, and Carrying Pistol W/O a Licence (I), which resulted in a 25 year sentence, was of which Petitioner did part of the sentence, was placed on parole. While on parole on April 19,1996, petitioner was charged with Felony Murder W/Armed, based solely on heresay statement from government informant looking for the holy grain to escape her charges, by trying to implicate petitioner of Murder of which her and unknown co-conspirator's committed, which she was later found guilty of.  The charges was later dismissed against Petitioner on April 29,1996 by the Grand Jury for lack of evidence, due to the inconsistence in government witness Ms. Camelita Metts.  This implication was done in a fashion that would automatically cause Petitioner's incarceration, due to him being on Parole.  Therefore, Petitioner Gary Barnes is currently being housed at the Federal Correction Complex- Medium in Petersburg Virginia due to the unconstitutional revocation hearing on July 30, 1996.  Which he has alrerady served 9 yrars of a full term date of July 30,2014.

## ARGUMENTS OF CONSTITUTIONAL VIOLATIONS

1)  The petitioner is challenging his present detention on the basis that his Federal Rights were violated at the unconstitut-

1  ional revocation hearing on July 30,1996 at which time his par-

2  ole revolked which resulted in him already have served 110 mon-

3  ths and counting.  The petitioner contends although all the char-

4  ges against Mr. Barnes were dismissed on April 29,1996 by the

5  Superior Court of the District of Columbia, Mr. Barnes was de-

6  tained by the Parole Commission for alleged violations of his

7  parole.  At the hearing petitioner's rights under the confront-

8  ation clause of the Sixth Amendment was violated when the Respon-

9  dent allowed at the hearing two (2) witnesses that were not wit-

10  nesses to the offense, which they would not be meaningfully cross

11  examined about the facts of the offense which was dismissed a-

12  gainst the petitioner was prejudice, furthermore, prejudice was

13  failure of the D.C. Board of Parole did not disclose any police

14  reports, statements made by any witnesses statements relating to

15  the offense charge against Mr. Barnes. Moreover, the D.C. Parole

16  Board continued to violate the most important basic fundamental

17  rights, when they failed to produce two (2) individuals the govern-

18  ment said implicated Mr. Barnes, which counsel would have been

19  able to cross-examine them as to their baises, their motive to

20  fabrication, their motives to help curry favor the government in

21  favor for Carmelita Metts.  There is no legal basis for the peti-

22  tioner not to have his counsel cross-examine his adversary wit-

23  ness and examine witness that is favorable to his defense at this

24  hearing, due to several introductions of statements individuals

25  allegedly made implicating Mr. Barnes which involve more than

(10)

1   several layers of hearsay and third party hearsay, which did

2   not constitute credible evidense.  The reason the confronta-

3   tion cross examination was so key at this parole revocation

4   hearing is that the only evidense presented regarding the al-

5   leged murder charge was based on the non disclosure of the evi-

6   dense of the police reports, non disclosure of witness state-

7   ments, non disclosure of the evidense it entered to rely on at

8   the hearing pertaing to Mr. Barnes.  the confrontation clause

9   main objective is to protect petitioner and criminal defendants

10  rights to be able to put to test in consistent statements made

11  by witnesses is to test the truthfulness to their statements or

12  what role did they play in the offense they are trying to impli-

13  cate others.  Some of these witnesses or third party hearsay

14  witnesses were not brought to testify at the revocation hear-

15  ing.    Instead their statements were heavily weighed upon the

16  desicion of D.C. Parole Board in revoking the petitioner's par-

17  ole.   The commission purposely fashioned this hearing by fail-

18  ure to disclose key witnesses,statements,and not calling them

19  to testify at the hearing.  Especially, one key witness whom

20  implicated the petitioner in the alleged murder, whom was later

21  found guilty to the said charge.  There was not a good cause

22  finding made as to why Ms. Metts and others like her were not

23  called to testify to see if their stories were corlaborated by the

24  government.  Regardless, to this obvious violation the respond-

25  ents allowed Metropolitan Police Detective Todd Amis to appear

1  in front of them testifing regarding the already dimsissed cha-
2  rge already dismissed by the grand jury against the petitioner,
3  to testify to regarding alleged knowlegde of which he did not
4  have personal knowledge of the facts of which was based on state-
5  ments of third party hearsay witness whom didn't have direct
6  knowledge of the crime, and one of Ms. Mett whom claimed respons-
7  ibilty for the crime.  Therefore, in this case petitioner claims
8  the Detective, non available witnesses, non disclosed evidense
9  that would aid to the violations against petitioner Mr. Barnes
10  Sixth Amendment and Fourteenth Amendment Right to confrontation
11  clause, and cross-examination of adverse witnesses.  The petit-
12  ioner contends that his right to confront and cross-examine ad-
13  verse witnesses at the parole revocation hearing had been vio-
14  lated.  Factually, there is no dispute in this case about that.
15  The petitioner's parole was revolked based solely on third party
16  hearsay, hearsay testimony contained in the non disclosure pol-
17  ice report and Detective Todd Amis knowledge of the investiga-
18  tion of dismissed case.   In assessing the petitioner's claim
19  of the three (3) primary cases that guide the analysis.
20  (1) Morrissery vs. Brewer:
21      The criminal case discussing the rights of criminal defend-
22  ants in parole revocation hearing is Morrissery vs. Brewer, 408
23  U.S. 471 (1972).  In Morrissery, the petitioner's claim that be-
24  cause their parole was revolked without a hearing, they were de-
25  prived of due process. Id.  Because the petitioner's were State

1  criminal defendants.  The central question for the Court was

2  "whether the Due Process Clause of the Fourteenth Amendment

3  require.  That a State afford an individual some opportunity

4  to be heard prior to revolking his parole".  Id. 408 U.S. at

5  472.  Thus the Court had to define the rights afforded crim-

6  inal defendant in parole revocation hearing and the second was

7  to determine whether State criminal defendants are entitled to

8  the same constitutional protections as Federal defendants via

9  the Due Process Clause of the Fourteenth Amendment.  Although

10  a defendant at a parole revocation hearing does not benefit

11  from the full panophy of rights availalble to a defendant in

12  a criminal prosecution, nonetheless, he is entitled to certain

13  minimum requirements of due process. <u>Morrissery vs. Brewer</u>, 408

14  U.S. 471, 489 (1972). At a "<u>minimum</u>" these rights include:, the

15  written notice of the criminal violations of parole: (b) dis-

16  closure to the parolee of evidense against him; (c) opportun-

17  ity to be heard in person and to present witnesses and document-

18  ary evidense; (d) the right to confront and cross-examine ad-

19  verse witnesses (unless the hearing exainer officers specif-

20  ically find good cause for not allowing confrontation); (e) a

21  "neutral and detached" hearing body such as a traditional parole

22  board, member of which need not be judicial officers or lawyers;

23  and (f) written statements by the fact finder as to the evidence

24  relied on and reason for revolking parole.

25      The Court in Morrissey is explicit that the right to con-

(13)

1  and cross-examine adverse witnesses (unless the hearing officer
2  specifically find good cause for not allowing confrontation) is
3  a "minimum requirement of due process" to be afforded criminal
4  defendants in parole revocation hearings. <u>Morrissey</u>,408 U.S. at
5  489.

6      These "few basic requirements," the Court stated, "should
7  not impose a great burden on a State's parole system" Id. 408
8  U.S. at 490.  Although a criminal defendant at a parole revoca-
9  tion hearing is entitled to the rights quoted above, the Court
10  cautioned that "there is no thought to equate this seocond stage
11  of a parole revocation to a criminal prosecution in any sense.
12  It is a narrow inquiry; the process should be flexible enough
13  to consider evidence including letters, affadavits, and other
14  materials that would not be admissible in an adversary criminal
15  trial. "Id. 408 U.S. at 489.  Thus, a reasonable reading of
16  <u>Morrissery</u> is that criminal defendants in parole revocation pro-
17  ceedings are entitled to certain rights equal to, or perhaps more,
18  but certainly not less, than the rights listed explicitly in
19  <u>Morrissey</u>.
20  (2) <u>Crawford vs. Jackson</u>:
21      <u>Crawford vs. Jackson</u>, 323 f.3d 123 (D.C. Cir.2003) the
22  question for the Court was whether the use of an uncorrobarted
23  non-disclosure investigation report contain hearsay evidence in
24  a parole revocation hearing violated a criminal defendant's due
25  process rights.  Citing <u>Morrissery</u>, the Court stated that "re-

(14)

1  liable hearsay evidence in a criminal prosecution violated the

2  Confrontation Clause.  The Court held in the affirmative, and

3  in so doing, abandoned the "reliability" test established by

4  the lower Federal and State Courts.  See: Id., 124 S.Ct at 1371-

5  1372.  The Court decision applied specifically to cases in which

6  the criminal defendants was entitled to the protection of the

7  Sixth Amendment's Confrontation Clause and did not consider its

8  decision vis-a-vis parole revocation proceeding.  In defining

9  the subjective, and often conflict conclusion made by that some

10 Courts have found hearsay testimony to be particular reliability,

11 the Court noted that some Courts have found hearsay testimony to

12 be particularly reliable because it was "detailed" which other

13 Courts have found it particularly reliable because it was "flee-

14 ting" the Federal Court are split with regards to whether Craw-

15 ford vs Washington, is binding precedent for parole revocation

16 hearings.  See: United States vs. Jarvis, 94 Fed Appx 501 (9th

17 Cir.2004), (holding that the right to confrontation and thus

18 Crawford vs Washington, applied to parole revocation hearings).

19 See: also United States vs. Barraza, 318 F.Supp 2d 1031 (S.D.

20 Cal 2004). In distinguishing confrontation afforded criminal de-

21 fendants in parole revocation hearings, the Federal District

22 Court for the Southern District of California has stated that

23 "the right to confrontation in a supervised release revocation

24 hearing is due process".

25 II.  Petitioner contends that his right to fair hearing was vio-

1  lated by the D.C. Parole Board and Respondent's by failing to

2  hold a separate revocation hearing from Mr. Singletary, due to

3  the fact that the instant case the petitioner was on parole for

4  he was on parole by himself, so this was a conflict automatic-

5  ally, because neither the petitioner, nor Mr. Singletary re-

6  ceived a fair hearing due to the unconstitutional joint revo-

7  cation hearing.  This violation rendered the whole revocation

8  hearing useless due to Respondents failure to follow the parole

9  guidelines when holding a revocation hearing.  The reason that

10  it is imperative to hold separate hearings to determine a non

11  bias decision for both parties.  Secondly, they the defendants

12  are not or the same case, because some evidence might taint one

13  defendant, then some might not, which could prejudice the other

14  parolees.  Therefore, the petitioner request a new separte hear-

15  ing.

16  III.  The Respondent's continue to violate the petitioners Eighth

17  Amendment Right to be free from illegal confinement by holding

18  petitioner in custody without giving him a special hearing/in-

19  termin hearing and or reconsider rehearing according to guide-

20  line policy of the Parole Board D.C. Code 24-131 (c) which in

21  fact clearly states whenever the Board of Parole or revolks par-

22  ole and the recommended set-off period is more than five (5) yrs.

23  the Board shall conduct a special hearing with the offender prior

24  to issuing a final decision.  The primary purpose of a special/

25  statutory interim conducted in the cases is to ensure that app-

(16)

1   ropriate set-off period is imposed.  The Parole Board determine
2   that a set-off period of more than five (5) yrs. may be appro-
3   priate for an offender whose parole is being denied or revolked
4   based on a hearing conducted by a Board Member, or a hearing,then
5   the case shall be removed from its original docket for referral
6   to the Director of Parole Determine Service "PDS Director and
7   Scheduling" for a special rehearing.  Upon receipt of a case re-
8   ferred by the Board under this policy the PDS Director, or designee
9   shall cause the issuance of an interim order to schedule the he-
10  aring.  Please see D.C. Code §§24-201.1 (1996 Repl. Vol) also:).
11  and 28 DCMR § 104 (as amended January 22,1988). Not only is the
12  D.C. Parole Board in violation of their own policy and guideline,
13  they disregard the due process of law that safeguards the peti-
14  tioner of abuse of discretion, by applying this set policy from
15  the outset of the Revocation Proceeding, for example, even be-
16  fore getting to the stage of holding a revocation hearing, there
17  must first be some type of evidence, disclosure and show cause
18  hearing before there must be a revocation hearing held, that was
19  not the case here in this instant case, therefore, the parole or-
20  der must be vacated for a new hearing or the petitioner released
21  from confinement immediately.  In the case of White vs Hyman,
22  clearly explains that Court rule and their decision "It states
23  that all grounds should include a hearing with a certain of a-
24  mount of time and if one is not sceduled within the time frame
25  of the policy, then the parole was in violation under 219 (B)

(17)

1   (219)(c) 219.3.  The petitioner further argues in case in
2   point under Morrissey vs Brewer 408 U.S. 471 (1972), "estab-
3   lished that a State may not terminate a parolee's condition
4   Liberty consistant with due process clause unless it follows
5   some orderly process, however formal.  That was not the case
6   in the petitioner's hearing.  Additionally, if the written
7   policy of the D.C. Board of Parole to have reconsideration
8   hearings for any parole violation given a set-off of that (5)
9   five yrs.  This policy is applicable to persons revoked.  In
10  this case petitioner has yet to receive the prescribed special
11  rehearing/reconsideration hearing.  Petitioner is over due for
12  one.  Furthermore, the USPC Regulation requires that there be
13  interim hearing conducted for person serving parole violation
14  terms.  28 C.F.R. 2.81 (making appilicable to D.C. Code Off-
15  enders 28 C.F.R. 2.21-2.21(b) and 2.14).  The purpose of interim
16  proceedings is to "consider any significant developements or
17  change in the prisoner's status that may have occurred for a
18  prisoner with a maximum term of less than seven (7) years the
19  interim hearing should occur every eighteen months.  28 C.F.R.
20  §§ 2.14(a)(1) for a prisoner with a maximum term of seven years
21  or more the interim hearing should occur every twenty-four mon-
22  ths.  28 C.F.R. 2.14(a)(11) Person subject to interim hearing
23  are entitled to representation at the hearing. 28 C.F.R. 2.14(a)
24  (1) (making applicable 28 C.F.R. 2.13(a)(1),).  The petitioner
25  pray that this Honorable Court order the Respondents to comply

(18)

1    with there own guideline and policy.

2    (IV) Further violation in this revocation hearing occured when

3    the D.C. Parole Board allowed the U.S. District Attorney for the

4    District of Columbia, Mr. Peter Zeidenburg and Detective Todd

5    Amis to appear at this hearing was a due process violation, due

6    to the fact they used this appearance has a tool of vindictive-

7    ness prosecution misconduct for influencing the outcome of the

8    revocation hearing, by appearing, because the case that purpose-

9    ly case this revocation was dismissed due to lack of evidence a-

10   gainst the petitioner by the grand jury.  Instead their interior

11   motive for appearing is influence the Board of Parole, at which

12   Detective Todd Amis and U.S. Attorney Zeidenburg requested the

13   petitioner's parole be revoked, therefore, there is no way the

14   petitioner could have received a fair revocation hearing. When

15   you have officers of the court advocating on the behalf of the

16   people in almost like a criminal case proceeding.  This alone

17   call into the bias,prejudice,and vindictiveness, the petitioner

18   received at this unconstitutional hearing.  This hearing was not

19   based on what violation the petitioner may had that caused his

20   parole being violated, it was more of abuse of power, on behalf

21   of government officials.  The governments mind set was eventhough

22   you are innocent of the charge that cause this revocation hear-

23   ing, we are not satified, we are just going to find a way to

24   still send you away, because all we have to do is show up at

25   your parole hearing, common sense, say the petitioner's parole

(19)

1  would be violated by this officals presense, which was also pre-

2  dujice,bias,and vindictive which rendered the whole revocation

3  hearing partial thus violated the petitioners right to a fair

4  hearing. Please see a similar case that came out of this same

5  District Court, "Maddox vs D.C. Parole Board"in the opinon of

6  Judge Sporkin it is in the judge language in the Maddox case.

7  "That Maddox has been in jail for more than three (3) years for

8  a crime he didn't commit and remained locked up because prosecut-

9  tors overstepped their bounds". In the Maddox case, Edward

10 Maddox, was a parolee who was acquitted for a firearms charge.

11 After his acquittal the prosecutor showed up at the D.C. Parole

12 hearing and pursuaded it members to revoke Maddox's parole citing

13 the very same fact already rejected by a jury. Judge Sporkin

14 said that was tantamount to trying Maddox twice for the same

15 crime. This Honorable Judge Sporkin ordered a new parole hear-

16 ing for Maddoz, due to the prosecutors conduct was vindictiveness.

17 This is the same case in the petitioners hearing. The Parole

18 Board was influenced by the prosecutors (Zeidenburg) appearance

19 because they in Maddox case revoked the petitioners parole, the

20 prosecutor was even allowed to give his account of evidence a-

21 gainst the petitioner which was already dismissed for lack of

22 evidence and like Maddox prosecutor, Mr. Zeidenburg was allowed

23 to participate in the questioning of some of the witnesses. This

24 is another reason that the Court should grant a new hearing or

25 and release petitioner from confinement immediately.

1   (V) The petitioner contends he did not receive effective assist-
2   ance of counsel, due to the fact he was not appointed counsel to
3   have meaningful comptent advocate on his behalf, because he was
4   represented by the same counsel that represented Mr. Singletary.
5   Which alone is a violation of a right to counsel. The counsels
6   performance fell below the legal standard of a comptent attorney,
7   for failure to subpoena witnesses, cross examine the thrid party
8   hearsay statements, recuse himself from being the attorney for the
9   petitioner, because the work load for handleing two revocation
10  hearings at the same time was overwhelming. Example: to the
11  Board of Parole he cannot fully represent the petitioner and Mr.
12  Singletary due to the conflict of interest of holding a joint
13  revocation hearing. Therefore, due to the performance of this
14  counsel the whole revocation hearing once again should be rend-
15  ered meaningless. There was no way that counsel could possibly
16  represent both defendants at his full ability. Once again peti-
17  tioner has shown he was denied a fair hearing, right to counsel,
18  right to confrontation of witnesses, right to evidence due to
19  ineffective assistance of counsel received at the revocation
20  hearing. On this issue alone the petitioner should have his
21  writ granted. See; Alabama vs Shelton, 71 CRL 226 U.S. 2002,
22  that a criminal defendant has a right to counsel when actual im-
23  prisonment is involved.
24  (VI) Finally, the petitioner argues that he was not appointed
25  counsel to fully put forward a meaningful defense to show that

1    petitioner, did in no way violate his parole, instead was denied

2    his legal constitutional right to counsel to adquently be repre-

3    sented properly, to put forward evidence to show otherwise, there-

4    fore, petitioner was denied legal counsel which is the Six Amend-

5    ment right, when there is loss of liberty at stake. See: Exhibits

6    Attached.

7    1.   Counsel James R. Boykins sworn affadavit whom represented the

8    petitioner as well as Mr. Charles Singletary, Exhibit 1.

9

10   Conclusion:

11       Petitioner stated for the above reason, that this Court find

12   that the petitioner should have been entitled to confront and also

13   cross-examine witnesses, entitled to separate parole hearing, en-

14   titled to special hearing according to set-off date which is over

15   five (5) years, petitioner be free of vindictiveness of prosecu-

16   tor at his hearing, entitled to effective assistance of counsel,

17   because petitioner's parole was revoked solely on this above men-

18   tioned constitutional violations, which the thrid party hearsay

19   testimony of police and police reports, which was based exclusive-

20   ly on hearsay after hearsay evidence testimony and non disclosure

21   evidence, therefore, based on this all this contention this Court

22   should find that the petitioner's constitutional rights to due

23   process was violated throughout this revocation hearing proceed-

24   ing.  For these reasons and any reason this Honorable Court may

25   deem appropriate.  Petitioner moves that his Writ of Habeas Cor-

pus be granted, and furthermore, order that petitioner's Writ
is in the appropriate jurisdiction pursuant to Interstate Corr-
ection Compact 24 § 24-1001 and 24-1002, and the fact that pet-
itioner is a D.C. Code Offender being housed outside of the Dist-
rict of Columbia's jurisdiction pursuant to said Compact.

Moreover, petitioner oppose any Motion that the Government
may proffer in attempting to have this Writ transferred to a
jurisdiction outside the District of Columbia. Petitioner prays
that this Habeas Corpus petition is granted. That Respondent's
and Custodian's of the petitioner is ORDERED to provide him
with a new hearing immediately that afford him his Constitutional
Rights or Release him from custody in the interest of justice.

If not so the miscarriage of justice that is already happened
will continue on, would be an irreversable damage to petitioner's
liberty.

Respectfully Submitted,

*Gary Barnes*

Gary Barnes
Reg.No.06015-007
F.C.C. Petersburg-Medium
P.O. Box 90043
Petersburg,Virginia
23804

This the 11th day of

*July*   2005.

(23)

## CERTIFICATE OF SERVICE

I, Gary Barnes, hereby certify that a copy of the fore-
going petition has been forwarded to the following Respondent's
postage pre-paid, by way of first class mail, on the _11th_ day
of _July_ 2005.

Anthony William
Mayor for the District of Columbia
441 Fourth Street N.W.
Washington, D.C. 20534

VaNessa Adams, Warden
P.O. Box 90042
Petersburg,Virginia 23804

Edward F. Reilly,Jr.
U.S. Parole Commission
5550 Friendship Blvd.
Suite 420
Chevy Chase, Maryland 20815

Harley G. Lappin, Director
Federal Bureau of Prison
320 First, N.W.
Washington, D.C. 20534

Odie Washington
Director of D.C. Dept. of Correction
1923 Vermont Ave.,N.W.
Washington, D.C. 20001

(24)